IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RAUL RODRIGUEZ,

           Petitioner,

      vs.

MATTHEW CATE,[1] Secretary, California
Department of Corrections and
Rehabilitation,

           Respondent.

No. 2:09-cv-01768-JKS

MEMORANDUM DECISION

Raul Rodriguez, a state prisoner appearing *pro se*, filed a Petition for Habeas Corpus under 28 U.S.C. § 2254.  Rodriguez is currently in the custody of the California Department of Corrections and Rehabilitation, incarcerated at the La Palma Correctional Center, Elroy, Arizona. Respondent has answered.  Rodriguez has not replied.

## I.  BACKGROUND/PRIOR PROCEEDINGS

A Sacramento County Superior Court jury convicted Rodriguez of two counts of committing a lewd and lascivious act upon a child under the age of fourteen, Cal. Penal Code § 288(a), one count of committing a forcible lewd and lascivious act upon a child under fourteen, Cal. Penal Code § 288(b)(1), and one count of committing a lewd and lascivious act upon a fourteen-year-old child while being at least ten-years older than the child, Cal. Penal Code § 288(c)(1).  The jury also found true the allegation that defendant engaged in substantial sexual

---

[1] Matthew Cate, Secretary, California Department of Corrections and Rehabilitation, is substituted for Jim MacDonald, Warden, Florence Correctional Center.  Fed. R. Civ. P. 25(d).

conduct with the victim in two of the counts, Cal. Penal Code § 1203.066(a)(8).  In January 2007

the trial court sentenced Rodriguez to an aggregate prison term of fourteen years and eight

months.  The California Court of Appeal, Third Appellate District, affirmed Rodriguez's

conviction and sentence in an unpublished decision,[2] and the California Supreme Court denied

review on March 28, 2008.  Rodriguez timely filed his Petition for relief in this Court on June 10,

2009.

Because the facts underlying Rodriguez's conviction are well known to the parties and

are not relevant to the issues raised in the Petition, they are not repeated here.

## II.  ISSUES RAISED/DEFENSES

In his Amended Petition, Rodriguez raises four enumerated grounds:  (1) his confession

was coerced; (2) his conviction was obtained by the use of evidence obtained through an

unlawful arrest; (3) a *Miranda* violation;[3] and (4) denial of the effective assistance of counsel.

Respondent contends that Rodriguez has failed to exhaust his state-court remedies with respect to

his first, second, and fourth grounds.  Respondent asserts no other affirmative defense.[4]

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C.

§ 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States" at the time the state court renders its decision or "was based

---

[2] *People v. Rodriguez*, No. C054960, 2008 WL 172075 (Cal. Ct. App. Jan. 22, 2008).

[3] *Miranda v Arizona*, 384 U.S. 436 (1966).  A short-hand reference to the failure to adequately inform a defendant of his rights to remain silent and the assistance of counsel.

[4] Rules Governing Section 2254 Cases in the U.S. Dist. Courts, Rule 5(b) (2011).

on an unreasonable determination of the facts in light of the evidence presented in the State court

proceeding."[5]  The Supreme Court has explained that "clearly established Federal law" in

§ 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the

time of the relevant state-court decision."[6]  The holding must also be intended to be binding upon

the states; that is, the decision must be based upon constitutional grounds, not on the supervisory

power of the Supreme Court over federal courts.[7]  Thus, where holdings of the Supreme Court

regarding the issue presented on habeas review are lacking, "it cannot be said that the state court

'unreasonabl[y] appli[ed] clearly established Federal law.'"[8]  When a claim falls under the

"unreasonable application" prong, a state court's application of Supreme Court precedent must

be "objectively unreasonable," not just "incorrect or erroneous."[9]  The Supreme Court has made

clear that the objectively unreasonable standard is "a substantially higher threshold" than simply

believing that the state-court determination was incorrect.[10]  "[A]bsent a specific constitutional

violation, federal habeas corpus review of trial error is limited to whether the error 'so infected

---

[5] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[6] *Williams*, 529 U.S. at 412 (alteration added).

[7] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[8] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations in original) (citation omitted); *see also Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

[9] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[10] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams,* 529 U.S. at 410).

the trial with unfairness as to make the resulting conviction a denial of due process.'"[11]   In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state court criminal trial is whether the error had a substantial and injurious effect or influence in determining the outcome.[12]   Because state court judgments of conviction and sentence carry a presumption of finality and legality, the petitioner has the burden of showing by a preponderance of the evidence that he or she merits habeas relief.[13]

The Supreme Court recently underscored the magnitude of the deference required:

As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  *Cf. Felker v. Turpin,* 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244).  *It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther.*  Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal.  *Jackson v. Virginia,* 443 U.S. 307, 332, n.5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment).  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.[14]

---

[11] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642, 643 (1974)).

[12] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[13] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (citations omitted); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

[14] *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011) (emphasis added).

4

In applying this standard, this Court reviews the "last reasoned decision" by the state court.[15]  State appellate court decisions that summarily affirm a lower court's opinion without explanation are presumed to have adopted the reasoning of the lower court.[16]  This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court.[17]  Under AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[18]  This presumption applies to state-trial courts and appellate courts alike.[19]

---

[15] *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)); *cf. Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) (explaining "how federal courts in habeas proceedings are to determine whether an unexplained order . . . rests primarily on federal law," and noting that federal courts must start by examining "the last reasoned opinion on the claim . . . . ").

[16] *Ylst*, 501 U.S. at 802-03 ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."); *cf. Richter*, 131 S. Ct. at 784 ("As every Court of Appeals to consider the issue has recognized, determining whether a states court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning.").

[17] *See Richter*, 131 S. Ct. at 784-85 (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference).

[18] 28 U.S.C. § 2254(e)(1); *see also Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary . . . ." (citing 28 U.S.C. § 2254(e)(1))).

[19] *See Stevenson v. Lewis*, 384 F.3d 1069, 1072 (9th Cir. 2004) ("Stevenson does not address these factual findings, let alone challenge them with clear and convincing evidence. Accordingly, we presume them to be correct." (citing 28 U.S.C. § 2254(e)(1); *Pollard v. Galaza*, 290 F.3d 1030, 1035 (9th Cir. 2002))).

IV.  DISCUSSION

**A.      Exhaustion**

Respondent challenges the first, second, and fourth grounds on the basis of a failure to exhaust available state-court remedies.  Rodriguez has not replied to Respondent's arguments. 28 U.S.C. § 2248 provides:

> The allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true.

Under § 2248, where a petitioner has not disputed a contention in the response and it does not appear from the record before the court that the contention is erroneous, the court may accept that contention.[20]

This Court may not consider claims that have not been fairly presented to the state courts.[21]  Exhaustion of state-court remedies requires the petitioner to fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.[22]  A petitioner fairly presents a claim to the state court for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum; (2) through the proper vehicle; and (3) by providing the proper factual and legal basis for the claim.[23]  A petitioner must alert the state courts to the fact that he is asserting a federal claim in order to fairly present the legal basis of the claim.[24]  In the Ninth Circuit, a

---

[20] *Phillips v. Pitchess*, 451 F.2d 913, 919 (9th Cir. 1971).

[21] 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases).

[22] *Duncan v. Henry,* 513 U.S. 364, 365 (1995).

[23] *Scott v. Schiro*, 567 F.3d 573, 582 (9th Cir. 2009).

[24] *Duncan,* 513 U.S. at 365-66.

petitioner must make the federal basis of the claim explicit either by referencing specific provisions of the federal Constitution or statutes, or citing to federal case law.[25]  Mere similarity of claims between a state law claim and a federal law claim is insufficient for exhaustion purposes.[26]  In order to present the substance of a claim to a state court, the petitioner must reference a specific federal constitutional provision as well as a statement of facts that entitle the petitioner to relief.[27]  A mere appeal to a broad constitutional guarantee, e.g., due process, is insufficient to present the substance of a constitutional claim to the state courts.[28]  A petitioner who cites one clause of a constitutional amendment does not exhaust a claim under a different clause of the same constitutional amendment.[29]  If a petitioner cites a state case that analyzes a federal constitutional issue, that federal issue is fairly presented.[30]  The required level of explicitness is the same for *pro se* petitioners and petitioners who are represented by counsel.[31]

On direct appeal, Rodriguez raised two issues:  (1) because he was not given a *Miranda* warning, the trial court erred in denying his motion to suppress statements that he made in an interview with a sheriff's detective; and (2) that the abstract of judgment should be amended to accurately reflect his sentence.[32]  In his appeal, other than the fact that he was not given a

---

[25] *Lyons v. Crawford,* 232 F.3d 666, 670 (9th Cir. 2000), *amended by Lyons v. Crawford,* 247 F.3d 904 (9th Cir. 2001).

[26] *Johnson v. Zenon,* 88 F.3d 828, 830 (9th Cir. 1996).

[27] *Gray v. Netherland,* 518 U.S. 152, 162-163 (1996).

[28] *See id.* at 163; *Anderson v. Harless*, 459 U.S. 4, 7 (1982).

[29] *Picard v. Connor,* 404 U.S. 270, 276-277 (1971).

[30] *Peterson v. Lampert,* 319 F.3d 1153, 1158 (9th Cir. 2003).

[31] *Lyons,* 232 F.3d at 669.

[32] The Court of Appeal did order the abstract of judgment corrected.

7

*Miranda* warning, Rodriguez did not raise any factual basis for his claim that the statements he made during the police interview should not have been admitted on his direct appeal. Thus, the additional facts Rodriguez presents in his Petition to this Court in connection with his first and second grounds were not raised in the state courts and may not be considered by this Court. As he did not raise an ineffective assistance of counsel claim at all in the state courts, Rodriguez is precluded from raising that claim in this proceeding.

Because Rodriguez failed to exhaust his state-court remedies as to his first, second, and fourth grounds, this Court may not consider them, and they must be dismissed.

**B.     Merits**

The detective interviewed Rodriguez in Spanish. He told Rodriguez that he was not under arrest and could leave at any time. The detective did not read Rodriguez his *Miranda* rights. In the course of the interview, Rodriguez made incriminating statements that were later admitted at trial. At the close of the interview, the detective allowed Rodriguez to join his aunt and uncle. However, after deciding that Rodriguez was a flight risk, the detective arrested Rodriguez outside the building. Rodriguez contends that, because he was not given the *Miranda* warning, admission of these statements violated his Fifth Amendment right against self-incrimination. The California Court of Appeal rejected Rodriguez's argument, holding:

> [Rodriguez] argues that he was "in custody" during his interview with Detective Hidalgo and Hidalgo's failure to read [Rodriguez] his *Miranda* rights rendered his statements inadmissible at trial. We conclude that the *Miranda* warnings were not required and [Rodriguez's] statements were properly admitted at trial.
> *Miranda* holds that when a suspect is questioned by law enforcement officers after being "taken into custody or otherwise deprived of his freedom of action in any significant way," the officer must warn the suspect that "he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." (384 U.S.

8

at p. 444.)  Because Detective Hidalgo did not formally arrest [Rodriguez] until after the interview ended, the question here is whether [Rodriguez] was "otherwise deprived of his freedom of action in any significant way ."  (*Ibid.*)

"The question whether defendant was in custody for *Miranda* purposes is a mixed question of law and fact. [Citation.]  'Two discrete inquiries are essential to the determination: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave.'"  (*People v. Ochoa* (1998) 19 Cal.4th 353, 401-402.)  In other words, the question whether the defendant was in custody turns on an objective assessment of the circumstances surrounding the interrogation, not on the subjective views of the interrogating officers or the person being questioned. (*Stansbury v. California* (1994) 511 U.S. 318, 323 [128 L.Ed.2d 293, 298].)

Courts may consider a number of factors in deciding whether a defendant is effectively in custody.  Among them are: "whether contact with law enforcement was initiated by the police or the person interrogated, and if by the police, whether the person voluntarily agreed to an interview; whether the express purpose of the interview was to question the person as a witness or a suspect; where the interview took place; whether police informed the person that he or she was under arrest or in custody; whether they informed the person that he or she was free to terminate the interview and leave at any time and/or whether the person's conduct indicated an awareness of such freedom; whether there were restrictions on the person's freedom of movement during the interview; how long the interrogation lasted; how many police officers participated; whether they dominated and controlled the course of the interrogation; whether they manifested a belief that the person was culpable and they had evidence to prove it; whether the police were aggressive, confrontational, and/or accusatory; whether the police used interrogation techniques to pressure the suspect; and whether the person was arrested at the end of the interrogation. [Citations.]" (*People v. Aguilera* (1996) 51 Cal.App.4th 1151, 1162 (*Aguilera* ).)  No one factor is dispositive. "Rather, [courts] look at the interplay and combined effect of all the circumstances to determine whether on balance they created a coercive atmosphere such that a reasonable person would have experienced a restraint tantamount to an arrest." (*Ibid.*)

Faced with the claim that [Rodriguez's] statement was inadmissible because it was obtained in violation of his rights under *Miranda,* "we accept the trial court's resolution of disputed facts and inferences, and its evaluation of credibility, if supported by substantial evidence.  [Citation.]   Although this court must independently determine from the undisputed facts, and those properly found by the trial court, whether the challenged statements were illegally obtained [citation], we may '"give great weight to the considered conclusions" of a lower court that has previously reviewed the same evidence.'  [Citations.]"  (*People v. Kelly* (1990) 51 Cal.3d 931, 947.)  Indeed, we will not set aside the trial court's ruling on a *Miranda* issue unless it is "'palpably erroneous,' i.e., unsupported by substantial evidence. [Citation.]"  (*People v. Salinas* (1982) 131 Cal.App.3d 925, 933.)

9

Here, the trial court found that [Rodriguez] was not in custody during the interview. It noted specifically that [Rodriguez's] testimony was "at odds" with that of Detective Hidalgo, and that [Rodriguez's] credibility was damaged by inconsistencies between his testimony at the suppression hearing and his statements during the interview. Hidalgo's testimony at the hearing and the interview transcript support the court's factual findings and the conclusion that a reasonable person would have felt free to leave the interview.

Detective Hidalgo initiated contact with [Rodriguez] through his uncle. [Rodriguez] came to the sheriff's station for the interview around 5:00 p.m., accompanied by his aunt and uncle. The two-hour interview took place in an interview room at the sheriff's station. Hidalgo interviewed [Rodriguez] alone. He advised [Rodriguez] at the beginning and end that he was not under arrest and was free to leave at any time. [Rodriguez] acknowledged that he understood. Hidalgo told [Rodriguez] at the end of the interview that he needed to complete his investigation before he could confirm what the next step would be. Thus, the facts of this case differ from those in *Aguilera, supra,* 51 Cal.App.4th at pages 1163-1164, which involved a "tag team" of officers who did not inform the defendant he was free to terminate the interview at any time.

Although the door to the interview room had a lock, Hidalgo left the door unlocked while he talked with [Rodriguez]. [Rodriguez] was not handcuffed. [Rodriguez] never indicated that he wanted to leave during the interview and never attempted to do so. [Rodriguez] was engaged in the entire exchange, responding in some way to every question. [Rodriguez] accepted Hidalgo's offer of water at the start of the interview. Hidalgo testified that [Rodriguez] appeared to be calm. When Hidalgo asked [Rodriguez] if he knew why he was being interviewed, [Rodriguez] said that J. told him she had accused him of raping her.

During the interview, Hidalgo repeatedly asked [Rodriguez] how he was doing and [Rodriguez] responded that he was "fine." Later in the interview, Hidalgo asked if [Rodriguez] felt fine talking to him and [Rodriguez] responded, "Yes." Toward the end of the interview, Detective Hidalgo asked, "Do you have any problem with how—how I've spoken with you or how I've treated you?" [Rodriguez] responded, "No. No, everything is fine."

Detective Hidalgo employed several standard interview tactics. He told [Rodriguez] that he had evidence that [Rodriguez] sexually abused J. Hidalgo repeatedly stated that he wanted to know why it happened—what [Rodriguez] was thinking in his mind and stressed the importance of [Rodriguez] telling him the truth. At one point, Hidalgo told [Rodriguez] that there were tests by which the officers could obtain evidence of sexual abuse, even if there was no penis-vagina penetration. Hidalgo left the room during a short break in questioning. When he returned, he told [Rodriguez] that he had seen test results on J., inferring that J. had contracted a sexually transmitted disease from [Rodriguez]. Although Hidalgo raised pointed questions, the tone of the interview was calm and respectful. Again, this interview differed from *Aguilera,* where the court found that the two-hour interview was "was intense, persistent, aggressive, confrontational, accusatory, and, at times, threatening

and intimidating," more like "the full-blown interrogation of an arrestee." (*Aguilera, supra,* 51 Cal.App.4th at p. 1165.)   Despite [Rodriguez's] testimony at the hearing that he did not feel free to leave after Hidalgo began demanding the truth, his behavior and statements he made during the interview itself contradicted his testimony.

Considering the circumstances surrounding the interrogation, and questions regarding the credibility of [Rodriguez's] testimony at the hearing, we conclude that the court properly determined that [Rodriguez] was not "in custody" during his interview with Detective Hidalgo and *Miranda* warnings were not required.[33]

Under *Miranda*, inculpatory statements made by a defendant during an interrogation while in police custody are inadmissible unless the defendant has been informed of his rights to remain silent and to the assistance of counsel and, after having been given the *Miranda* warning, waives those rights.[34]  The touchstone for the requirement that a defendant be given a *Miranda* warning is that he or she be in custody.  The fact that a person is being questioned in a police station or because a person is the subject of police suspicion does not necessarily trigger the requirement that a *Miranda* warning be given.  A *Miranda* warning is required "'where there has been such a restriction on a person's freedom as to render him "in custody."'"[35]  Whether a suspect is "in custody" is an objective inquiry.

Two discrete inquiries are essential to the determination:   first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was at liberty to terminate the interrogation and leave.  Once the scene is set and the players' lines and actions are reconstructed, the court must apply an objective test to resolve the ultimate inquiry:

---

[33] *People v. Rodriguez*, No. C054960, 2008 WL 172075, at *3-5 (Cal. Ct. App. Jan. 22, 2008).  Except for the petitioner's name, this appears exactly as it does in the original.

[34] *North Carolina v. Butler*, 441 U.S. 369, 372-73 (1979) (citing *Miranda v. Arizona*, 384 U.S. 436, 475 (1966)).

[35] *Stansbury v. California*, 511 U.S. 318, 322 (1994) (per curiam) (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (per curiam)).

was there a formal arrest or restraint on freedom of movement of the degree associated with formal arrest.[36]

The first inquiry is strictly factual, and state-court determinations on this inquiry are entitled to the presumption of correctness under § 2254(d).[37]  The second, however, calls for the application of the controlling legal standard to the historical facts, which presents a mixed question of law and fact calling for independent review.[38]

    Supreme Court precedent requires that a court  "examine all of the circumstances surrounding the interrogation," including any circumstance that "would have affected how a reasonable person" in the suspect's position "would perceive his or her freedom to leave."[39]  The subjective views harbored by either the interrogating officers or the person being questioned are irrelevant to this determination.[40]  The "actual mindset" of the particular suspect being questioned is of no consideration.[41]  "[T]he ultimate inquiry is simply whether there [was] a formal arrest or restraint of movement of the degree associated with a formal arrest."[42]

    In the context of determining whether a state court has reasonably applied clearly established federal law to reach its determination, "the range of reasonable judgment can depend

---

[36] *Thompson v. Keohane*, 516 U.S. 99, 112 (1995) (internal quotation marks and citation omitted).

[37] *Id.*

[38] *Id.* at 112-13, 115.

[39] *Stansbury*, 511 U.S. at 322, 325.

[40] *Id.* at 323.

[41] *Yarborough v. Alvarado*, 541 U.S. 652, 668 (2004).

[42] *Stansbury*, 511 U.S. at 322 (alteration in original) (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (per curiam)) (internal quotation marks omitted).

in part on the nature of the relevant rule."[43]  "The custody test is general," and "[t]he more general the rule, the more leeway courts have in reaching outcomes in case by case determinations."[44]  Applying this standard and the deference required under AEDPA, this Court cannot find that the decision of the California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[45]  Nor can this Court find that the state court unreasonably applied the correct legal principle to the facts of Rodriguez's case within the scope of *Andrade-Williams-Landrigan-Richter*; i.e., the state court decision was not more than incorrect or erroneous, its application of clearly established federal law was not objectively unreasonable.

---

[43] *Yarborough,* 541 U.S. at 664.

[44] *Id.* at 664-65 (citation omitted).

[45] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

## V.  CONCLUSION AND ORDER

Rodriguez has not exhausted his available state-court remedies with respect to his first, second, and fourth grounds, and is not entitled to relief on his third ground.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[46]  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.[47]

The Clerk of the Court is to enter judgment accordingly.

Dated: February 8, 2012.

            /s/ James K. Singleton, Jr.
            JAMES K. SINGLETON, JR.
            United States District Judge

---

[46] 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's  resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003))).

[47] *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.